**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **RICKY K. HOOKS SR.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 05-CV-0266-CVE-PJC |
| ) | |
| **OKLAHOMA SAFETY EQUIPMENT** ) | |
| **COMPANY, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

**OPINION AND ORDER**

Now before the Court are the motion for summary judgment (Dkt. # 30) filed by defendant, Oklahoma Safety Equipment Company, Inc. ("OSECO"), and the motion for summary judgment (Dkt. # 31) filed by plaintiff, Ricky K. Hooks Sr. Plaintiff alleges that OSECO violated Title VII of the Civil Rights Act of 1964 ("Title VII") when it discriminated against him on the basis of race by refusing to hire him as a permanent employee. 42 U.S.C. § 2000e et seq. The parties agree that this Court has jurisdiction and venue is proper.

**I.**

Hooks, an African-American male, began working at OSECO as a temporary worker ("temp") on September 19, 2003. Express Personnel Services ("Express") is a temporary employment agency which placed plaintiff with OSECO. OSECO uses several temporary employment agencies to fill its four different non-managerial positions: general laborers, receptionists, maintenance workers, and tig welders. According to OSECO, it does not give temps an express or implied guarantee of permanent employment. Among the four temp positions, tig welders are the most skilled, maintenance workers are the second most skilled, and general laborers'

duties are relatively unskilled.  The pay earned by each of the job classifications reflects the demands of the position.[1]  While at OSECO, plaintiff worked as a tig welder.

Plaintiff filed a discrimination complaint with the Oklahoma Human Rights Commission (OHRC) on January 30, 2004, alleging that OSECO violated Title VII by refusing to hire him, on the basis of race, as a permanent tig welder immediately following his first 90 days as a temp.[2]  Dkt. # 32, Ex. 1, at 4.  In his OHRC charge, plaintiff alleges that the discrimination began on December

---

[1]  Tig welders earn approximately 50% more than general laborers; maintenance employees are compensated about 20% more than general laborers.  Dkt. # 30, Ex. A, at 3.

[2]  In his motion for summary judgment, plaintiff alleges that an employee at OSECO subjected him to racist slurs.  According to plaintiff, he reported the incident to his supervisor and other managers of the company, and the company told him that the offending employee had been written up as a consequence.

Plaintiff does not allege hostile work environment or constructive discharge in his complaint, nor does he now offer evidence to support his claims.  See Sanchez v. Denver Public Schools, 164 F.3d 527, 534 (10th Cir. 1998) (holding that, to show a prima facie case of constructive discharge, the conditions complained of must be "objectively intolerable," and a plaintiff's subjective view of the situation is irrelevant).

In reading pro se pleadings liberally, the Court should not become a litigant's advocate.  Accordingly, the Court finds that plaintiff did not properly assert a claim of constructive discharge based on hostile work environment and restricts its analysis to plaintiff's "refusal to hire" claim.

19, 2003, his 91 day on the job.[3]  Id.  According to plaintiff, he asked OSECO for a permanent job before December 18, 2003, and OSECO told plaintiff "that [he] still be long [sic] to the temp agency, end of story, Thats [sic] when I filed my complaint."  Dkt. # 31, at 2.  Plaintiff requests damages in the amount of $54 million.

OSECO states that it has an agreement with Express whereby, if it hires a temp from Express on a permanent basis before the temp works for 90 days, OSECO pays Express an additional premium.  Based on this arrangement, OSECO rarely offers permanent employment to temps before they have worked for 90 days.  OSECO tends to offer permanent positions to unskilled general laborers earlier than to skilled temps because of its perceived need for more intensive evaluation of work demanding greater skill.

---

[3]  Plaintiff suggests, but provides no evidence which could support a finding, that OSECO had an improper motive in offering him permanent employment.  Plaintiff accuses OSECO of offering him a permanent position to rectify its previous violation of Title VII: "I go and file my complaint for race discrimination, and after filing my lawsuit against them, 'Now you want to apologize' but now its to [sic] late."  Dkt. # 31, at 7.  However, the summary judgment record does not support plaintiff's theory that OSECO offered him a permanent position to try to quiet him after he complained to the EEOC.  In fact, the record indicates that the first time that anyone at OSECO learned of plaintiff's allegation of race discrimination was when plaintiff told his supervisor about filing a complaint after the supervisor offered him permanent employment.  Dkt. # 30, Ex. A-C.

Therefore, with regard to a potential retaliation claim, plaintiff has presented no genuine issue of material fact that OSECO was aware of plaintiff's intent to file a discrimination claim.  "An employer's action against an employee cannot be <u>because</u> of that employee's protected opposition unless the employer knows that employee has engaged in protected opposition."  <u>Peterson v. Utah Dept. of Corrections</u>, 301 F.3d 1182, 1188 (10th Cir. 1982) (emphasis in original).  Further, OSECO cannot be held liable for offering plaintiff a job.  <u>Id.</u> (discussing what constitutes an adverse employment action under Title VII).

3

OSECO offered plaintiff a permanent position as a skilled worker on January 30, 2004, his 133 day on the job.[4] Plaintiff declined the job offer and informed his supervisor that he had already filed a race discrimination complaint with the OHRC. Plaintiff's last day of work at OSECO was February 13, 2004. He filed this lawsuit on May 16, 2005, after receiving his right to sue letter from the United States Equal Employment Opportunities Commission ("EEOC") on May 12, 2005. Plaintiff argues that OSECO's refusal to permanently hire him before 90 days on the job, when it offered a permanent job to a white temp after only 67 days on the job, constitutes a discriminatory hiring practice.[5]

OSECO's hiring practices are illustrated by its treatment of temps between December 19, 2002 to May 21, 2004.[6] During this time period, OSECO hired twenty-four temps, of which two were tig welders, one was maintenance, one was a receptionist, and twenty were general laborers. Dkt. # 30, Ex. 1. Plaintiff was the only African-American. Id. Eleven temps, all general laborers, were not offered permanent employment. Id. Of those general laborers who were hired on a permanent basis, OSECO extended offers to them as early as 60 days on the job. Id. In contrast, the four skilled temps were not offered permanent positions any earlier than 129 days on the job. Plaintiff was offered a permanent position after 133 days on the job. Id. During the relevant time

---

[4]  OSECO's offer of permanent employment to plaintiff is evidenced by his employee number on the top of his personnel file. Dkt. # 30, Ex. 2. OSECO will not assign an employee number to a temp. Id., Ex. A, at 4.

[5]  Plaintiff argues that the fact that OSECO offered Kirk Davis, a white man, a permanent job within 67 days of starting work, in contrast to plaintiff's 133 days, proves discrimination. See Dkt. # 30, Ex. 1. Davis was a general laborer.

[6]  The OHRC identified the period between December 19, 2002 to May 21, 2004, when OSECO filed its answer, as the appropriate time frame for discovery in this matter. Dkt. # 32, Ex. 1, at 3.

4

period for this litigation, only two tig welders worked at OSECO: plaintiff and the current tig welder, Everett Conley, who is Caucasian and who was offered permanent employment after 129 days. Similarly, the maintenance temp was not offered permanent employment for 151 days and the receptionist temp waited 161 days before being offered a permanent position. Id.

According to OSECO, it did not consider plaintiff's race when it delayed offering him a permanent position for 43 days after plaintiff's 90 day period expired. OSECO argues that it generally delays employment offers to temp tig welders because, as the position is better compensated and requires greater skill than general laborers, the company takes more time to consider whether the temp qualifies for permanent employment.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 317.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

586-87 (1986) (citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff."  Anderson, 477 U.S. at 252.  In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.  In its review, the Court construes the record in the light most favorable to the party opposing summary judgment.  Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).  However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

### III.

Reading plaintiff's pleadings liberally, the Court examines his allegation of race discrimination under Title VII.  See Jones v. Cowley, 28 F.3d 1067, 1069 (10th Cir. 1994) (recognizing that pro se complaints are held to less stringent standards than pleadings drafted by lawyers and the Court must construe them liberally) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)).

Congress passed Title VII to redress prejudice by creating a cause of action for individuals who face discrimination in the workplace.  See Taken v. Oklahoma Corp. Com'n, 125 F.3d 1366, 1369 (10th Cir. 1997) ("The principal goal of Title VII is to eliminate discrimination in employment based on differences of race, color, religion, sex or national origin") (citing Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 71 n.6 (1977)).  Plaintiff seems to concede that OSECO did not offend

the law, but rather his sensibilities.[7]  Plaintiff's failure to offer a scintilla of evidence to support his allegation of race discrimination threatens to undermine the goals of Title VII by discrediting its mission with baseless litigation.

To survive summary judgment, plaintiff must first establish a prima facie case of race discrimination.  To establish a prima facie case of race discrimination, plaintiff must prove that: he is a member of a protected group; he was similarly situated by circumstance to an individual not a member of such a group; and he was treated more harshly or disparately than the similarly situated non-group member.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  It is undisputed that plaintiff is African-American and, thus, a member of a race-based protected class.  However, plaintiff does not carry his burden because he does not "show that [he] 'essentially did the same type of work' as the employees [he] point[s] to for purposes of comparison."  See Beaird v. Seagate Technology, Inc., 145 F.3d 1159, 1171 (10th Cir. 1998) (quoting Fallis v. Ken-McGee Corp., 944 F.2d 743, 745 (10th Cir. 1991)).  Plaintiff argues that OSECO's treatment of Kirk Davis, a Caucasian, who received an offer of permanent employment within 67 days of starting work, contrasts to OSECO's treatment of plaintiff.  However, Davis was not in a comparable position, as

---

[7]  Plaintiff suggests that he would like the Court to hold OSECO liable for lawful actions on the grounds that he finds the actions offensive:

> **RIGHTEOUSNESS** rules in the court of law not the law, just because it's the law doesn't make it RIGHT!  Because if the law is made by man who is unjust, and ungodly, and corrupt, unfair, plotting evil, and deception, which is all unrighteousness, Therefore the law is unjust, ungodly, and wicked, and unfair which makes the whole system workers of unrighteousness.

Dkt. # 31, at 3 (emphasis in original).

7

Davis was a general laborer. In fact, the record shows that all skilled temps during the relevant time period had to wait over 128 days before receiving an offer for permanent employment.

Plaintiff's only submissions to the summary judgment record are his pleadings, the EEOC right to sue letter, and the EEOC's summary of civil rights law. A right to sue letter is an administrative prerequisite for filing a discrimination suit in federal court. It does not contain any factual findings or fact-based conclusions related to this case. Dkt. # 31, Ex. 1. A right to sue letter issued by the EEOC is of no probative value and is insufficient to support plaintiff's motion for summary judgment or to respond adequately to OSECO's motion for summary judgment.

Further, mere conclusory allegations are insufficient to defeat summary judgment; rather, "there must be evidence on which the [trier of fact] could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252. Much of plaintiff's pleadings are dedicated to convictions separate from the legal remedies sought before this Court. It is the duty of this Court to apply the law and plaintiff has identified no law prohibiting OSECO from delaying a job offer to skilled temporary workers. Plaintiff has not supplied the Court with any evidence to support his allegations of race discrimination.

"While plaintiffs' pro se pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers, plaintiffs must nonetheless set forth sufficient facts to support their claims." Diaz v. Paul J. Kennedy Law Firm, 289 F.3d 671, 674 (10th Cir. 2002). Plaintiff alleges that OSECO refused to hire him on the basis of race, but offers no evidence to refute OSECO's evidence that they offered him permanent employment as a tig welder within the same general time frame as they offered permanent positions to other skilled temps. Plaintiff has failed to submit any evidence of wrongful employment discrimination. Accordingly, the Court finds

8

that plaintiff has failed to show that a genuine issue of material fact exists as to his claim of race discrimination, and OSECO is entitled to summary judgment.

**IT IS THEREFORE ORDERED** that defendant's motion for summary judgment (Dkt. # 30) is **granted** and plaintiff's motion for summary judgment (Dkt. # 31) is **denied**.

**IT IS SO ORDERED** this 4th day of May, 2006.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT